AUSA: John Sarlitto

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BRANDON HUNTER-CARNEY,<br><br>Defendant. | 26 mj 1362<br>**SEALED COMPLAINT**<br><br>Violations of 18 U.S.C. §§ 641, 1344, 1349, and 2<br><br>COUNTIES OF OFFENSE: WESTCHESTER; BRONX; NEW YORK. |

SOUTHERN DISTRICT OF NEW YORK, ss.:

KRISTEN KEMMLEIN, being duly sworn, deposes and says that she is a Special Agent with the U.S. Department of the Treasury, Treasury Inspector General for Tax Administration ("TIGTA"), and charges as follows:

**COUNT ONE**
**(Conspiracy to Commit Bank Fraud)**

1. From at least on or about January 25, 2023 through at least on or about July 2, 2024, in the Southern District of New York and elsewhere, BRANDON HUNTER-CARNEY, the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit bank fraud, in violation of Title 18, United States Code, Section 1344.

2. It was a part and an object of the conspiracy that BRANDON HUNTER-CARNEY, the defendant, and others known and unknown, knowingly would and did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, as that term is defined in Title 18, United States Code, Section 20, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such a financial institution, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344, to wit, HUNTER-CARNEY, together with others known and unknown, knowingly deposited, and caused to be deposited, stolen and counterfeit checks worth at least approximately $1,137,591.19 into accounts controlled by HUNTER-CARNEY and held at a financial institution insured by the Federal Deposit Insurance Corporation in order to obtain funds for personal use.

(Title 18, United States Code, Section 1349.)

**COUNT TWO**
**(Bank Fraud)**

3. From at least on or about January 25, 2023 through at least on or about July 2, 2024, BRANDON HUNTER-CARNEY, the defendant, knowingly executed, and attempted to execute, a scheme and artifice to defraud a financial institution, as that term is defined in Title 18, United

States Code, Section 20, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such a financial institution, by means of false and fraudulent pretenses, representations, and promises, to wit, HUNTER-CARNEY knowingly deposited, and caused to be deposited, stolen and counterfeit checks worth at least approximately $1,137,591.19 into accounts controlled by HUNTER-CARNEY and held at a financial institution insured by the Federal Deposit Insurance Corporation in order to obtain funds for personal use..

(Title 18, United States Code, Sections 1344 and 2.)

**COUNT THREE**
**(Theft of Government Funds)**

4. From at least on or about June 18, 2024 through at least on or about July 2, 2024, BRANDON HUNTER-CARNEY, the defendant, embezzled, stole, purloined, and knowingly converted to his use and the use of another, a record, voucher, money, and thing of value of the United States and a department and agency thereof, to wit, the United States Department of Treasury, which exceeded the sum of $1,000, and received, concealed, and retained the same with intent to convert it to his use and gain, knowing it to have been embezzled, stolen, purloined, and converted, to wit, HUNTER-CARNEY deposited and caused to be deposited into a bank account controlled by HUNTER-CARNEY at least approximately $54,610.90 in United States Treasury checks made out to individuals other than HUNTER-CARNEY.

(Title 18, United States Code, Sections 641 and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

5. I have been employed as a Special Agent with TIGTA since approximately January 2002. Over the course of my career in federal law enforcement, I have participated in numerous investigations of bank and check fraud, including matters involving stolen, fraudulent, altered, or defaced personal, business, and U.S. Treasury checks. Through my training and experience, I have become familiar with the means by which individuals obtain, conceal, and dissipate proceeds of bank fraud schemes.

6. This Complaint is based upon my participation in the investigation of this matter, including my conversations with law enforcement officers and other individuals, my review of photographs and videos, my review of financial institution records, and my review of law enforcement and other government reports and records. Because this Complaint is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned in the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Where figures, calculations, and dates are set forth herein, they are approximate, unless stated otherwise.

**HUNTER-CARNEY'S BANK FRAUD SCHEME**

7. From my participation in this investigation, and as recounted in greater detail below, I have learned that, from at least on or about January 25, 2023 through at least on or about July 2, 2024,

BRANDON HUNTER-CARNEY, the defendant, and others known and unknown, carried out a bank fraud scheme (the "Bank Fraud Scheme") involving the deposit of fraudulent and/or stolen checks, including both business checks and U.S. Treasury checks, into bank accounts controlled by HUNTER-CARNEY at a financial institution I know from my research and training to be insured by the Federal Deposit Insurance Corporation ("Bank-1"). As described below, in at least one instance in which funds from a stolen U.S. Treasury check were made available by Bank-1 in a checking account controlled by HUNTER-CARNEY, the defendant subsequently withdrew such funds via a series of cash withdrawals and/or transfers.

8. From a review of records obtained from Bank-1, I am aware that BRANDON HUNTER-CARNEY, the defendant, first opened a checking account with Bank-1 on or about August 22, 2012 at a Bank-1 branch in or around Mount Vernon, New York, and was assigned an account number ending in -8730 (the "HUNTER-CARNEY Bank-1 Personal Checking Account").[1] At the time the HUNTER-CARNEY Bank-1 Checking Account was opened, HUNTER-CARNEY supplied Bank-1 with a home address on or near South 10th Avenue in Mount Vernon (the "South 10th Avenue Address"). HUNTER-CARNEY also supplied Bank-1 with a copy of his birth certificate and his social security number.

9. As discussed below, BRANDON HUNTER-CARNEY, the defendant, used the HUNTER-CARNEY Bank-1 Personal Checking Account, along with at least one other Bank-1 account opened and controlled by HUNTER-CARNEY, in furtherance of the Bank Fraud Scheme. Summarized below, in substance and in part and without limitation, is evidence developed in the course of the Government's investigation regarding four stolen or fraudulent checks used by the defendant and others known and unknown to carry out the Bank Fraud Scheme.

**BUSINESS CHECK-1**

10. From my participation in this investigation, my review of law enforcement and other government records and documents, my review of records obtained from financial institutions pursuant to legal process, and my discussions with other law enforcement officers, I am aware of the following, in substance and in part and without limitation, regarding a certain stolen business check with a face amount of approximately $800,160.00 ("Business Check-1"):

a. On or about January 10, 2023, a company with headquarters located in or around Phillipsburg, New Jersey ("Company-1") issued a corporate check payable to a company with headquarters located in or around Birmingham, Alabama ("Company-2") in the amount of approximately $800,160.00.

b. On or about January 23, 2023, records obtained from the New York State Department of State reflect that a business entity with a name identical to that of Company-2 was registered in the State of New York. State records reflect that the address of record associated

[1] At the time the HUNTER-CARNEY Bank-1 Personal Checking Account was opened, I know from law enforcement and public source records that HUNTER-CARNEY was approximately 13 years old. In Bank-1 records obtained and reviewed by law enforcement, the "account type" associated with the HUNTER-CARNEY Bank-1 Personal Checking Account is "High School Checking." Later-in-time records describe the account as a "College Checking" account.

with this business entity was the South 10th Avenue Address, and the beneficial owner was BRANDON HUNTER-CARNEY, the defendant. Internal Revenue Service ("IRS") records confirm that an employee identification number ("EIN") was obtained for the business entity using the IRS's online portal on or about January 20, 2023. Internet Protocol ("IP") address data for that EIN creation resolve to an IP address assigned to the South 10th Avenue Address, *i.e.*, HUNTER-CARNEY's known residential address in or around Mount Vernon.

c. On or about January 24, 2023, records obtained from Bank-1 reflect that HUNTER-CARNEY opened a business checking account in the name of Company-2 at a Bank-1 branch located on or near Castle Hill Avenue in the Bronx (the "HUNTER-CARNEY Bank-1 Business Checking Account"). To open the HUNTER CARNEY Bank-1 Business Checking Account, HUNTER-CARNEY provided his social security number and a phone number ending in -0471, which is associated with HUNTER-CARNEY in law enforcement and public source records, and signed a signature card and a business depository certificate in the Bank-1 branch, both of which identified him as the "President" of Company-2.

d. Know-your-customer ("KYC") records generated by Bank-1 reflect that HUNTER-CARNEY was the beneficial owner and controller of the business entity that opened the HUNTER CARNEY Bank-1 Business Checking Account, and that Bank-1 had verified the identity of HUNTER-CARNEY, a Bank-1 customer since approximately 2012, in connection with the opening of the HUNTER CARNEY Bank-1 Business Checking Account.

e. On or about January 25, 2023, Business Check-1 was deposited into the HUNTER CARNEY Bank-1 Business Checking Account at a Bank-1 branch located on or near Westchester Avenue in the Bronx. The back of the check was endorsed with BRANDON HUNTER-CARNEY's signature, as well as HUNTER-CARNEY's New York State driver's license number and expiration date.

11. From my training and experience investigating schemes involving check fraud, I know that fraud perpetrators who have acquired a stolen corporate check of significant face value, such as Business Check-1, will often form a business entity with the same or a similar name as the corporate beneficiary of the stolen check, open a bank account for that business entity, deposit the stolen check in the newly opened bank account, and subsequently dissipate the proceeds through account withdrawals and/or transfers. I assess that HUNTER-CARNEY and his co-conspirators, known and unknown, attempted to engage in such pattern of fraud in this instance using Business Check-1, a corporate check issued by Company-1 for the benefit of Company-2.

12. From a review of Bank-1 records, I am aware that Bank-1's anti-fraud processes and controls successfully identified Business Check-1 as a likely stolen check and therefore froze the proceeds of the check in the HUNTER CARNEY Bank-1 Business Checking Account.

**BUSINESS CHECK-2**

13. From my participation in this investigation, my review of law enforcement and other government records and documents, my review of records obtained from financial institutions pursuant to legal process, and my discussions with other law enforcement officers, I am aware of

the following, in substance and in part and without limitation, regarding a certain counterfeit business check with a face amount of approximately $282,820.29 ("Business Check-2"):

a. Business Check-2, which is dated on or about May 28, 2024, purports to originate with a manufacturer and distributor of steel piping based in or around St. Louis, Missouri ("Company-3"). The purported beneficiary of Business Check-2, in the amount of approximately $282,820.29, was BRANDON HUNTER-CARNEY, the defendant, with an address corresponding to the South 10th Avenue Address.

b. On or about June 4, 2024, Business Check-2 was deposited into the HUNTER-CARNEY Bank-1 Personal Checking Account via an ATM located in or near Upper Manhattan. Surveillance footage from the ATM, which law enforcement obtained and reviewed, shows a masked individual effecting the deposit:



14. From my training and experience investigating schemes involving check fraud, I know that fraud perpetrators often fabricate or doctor corporate checks to make themselves or co-conspirators beneficiaries, and attempt to deposit such checks in bank accounts they own or control. I assess that HUNTER-CARNEY and his co-conspirators, known and unknown, attempted to engage in such pattern of fraud in this instance using Business Check-2, a fraudulent corporate check issued in the name of Company-3.

15. From a review of Bank-1 records, I am aware that Bank-1's anti-fraud processes and controls successfully identified Business Check-2 as a likely fraudulent check and therefore froze the proceeds of the check in the HUNTER CARNEY Bank-1 Personal Checking Account.

**TREASURY CHECK-1**

16. From my participation in this investigation, my review of law enforcement and other government records and documents, my review of records obtained from financial institutions pursuant to legal process, and my discussions with other law enforcement officers, I am aware of the following, in substance and in part and without limitation, regarding a certain stolen U.S. Treasury check with a face amount of approximately $17,696.00 ("Treasury Check-1"):

a. From my review of Treasury Department records, I am aware that, on or about April 29, 2024, the IRS issued Treasury Check-1 to an individual resident in or around Manhattan, New York ("Individual Victim-1") as Individual Victim-1's federal tax refund for calendar year 2023.

b. On or about June 18, 2024, Treasury Check-1 was deposited into the HUNTER CARNEY Bank-1 Personal Checking account via an ATM located in the vicinity of Queens, New York. Surveillance footage from the ATM and branch lobby, which law enforcement obtained and reviewed, shows a male individual ("CC-1") effecting the deposit:





c. From a review of Bank-1 records, I am aware that, unlike with respect to Business Check-1 and Business Check-2, funds associated with Treasury Check-1 were credited to the HUNTER-CARNEY Bank-1 Personal Checking Account. Bank-1 records reflect that these funds were dissipated in subsequent days by BRANDON HUNTER-CARNEY, the defendant, through a series of withdrawals and transfers totaling approximately $17,580, including: (i) a transfer of approximately $1,380 to HUNTER-CARNEY's Apple Cash balance on or about June 19, 2024; (ii) a teller withdrawal of approximately $10,200 from a Bank-1 branch in or near New Rochelle, New York on or about June 28, 2024; and (iii) a second teller withdrawal of approximately $6,000 from the same Bank-1 branch on or about the same day, approximately minutes after the first withdrawal.

d. Surveillance video from the lobby of the Bank-1 branch in the vicinity of New Rochelle, New York on or about June 28, 2024, which I have reviewed, identifiably captures BRANDON HUNTER-CARNEY, the defendant, engaging with the Bank-1 teller, handing her multiple forms of picture identification, and using his Bank-1 debit card to effect the withdrawals. An image excerpted from that surveillance footage is below:



e. From my review of law enforcement and Department of Motor Vehicles records, I assess that the appearance of the individual depicted above is consistent with photographs of HUNTER-CARNEY contained in those records.

f. On or about July 29, 2024, Individual Victim-1 filed a claim against the United States Government on Form-1133 asserting that Individual Victim-1 never received and never cashed Treasury Check-1, which represented Individual Victim-1's 2023 federal tax refund.

**TREASURY CHECK-2**

17. From my participation in this investigation, my review of law enforcement and other government records and documents, my review of records obtained from financial institutions pursuant to legal process, and my discussions with other law enforcement officers, I am aware of the following, in substance and in part and without limitation, regarding a certain stolen U.S. Treasury check with a face amount of approximately $36,914.90 ("Treasury Check-2"):

a. From my review of Treasury Department records, I am aware that, on or about June 27, 2024, the U.S. Department of Veterans Affairs ("VA") issued Treasury Check-2 to an elderly military veteran resident in or around Moore, Oklahoma ("Individual Victim-2") as payment of certain VA benefits to which Individual Victim-2 was entitled.

b. On or about July 2, 2024 at approximately 4:21 p.m., Treasury Check-2 was deposited into the HUNTER CARNEY Bank-1 Personal Checking account via an ATM located in or near Manhattan, New York.

c. From a review of Bank-1 records, I am aware that Bank-1's anti-fraud processes and controls successfully identified Treasury Check-2 as a likely stolen check and therefore froze the proceeds of the check in the HUNTER CARNEY Bank-1 Personal Checking Account.

d. On or about August 9, 2024, Individual Victim-2 filed a claim against the United States Government on Form-1133 asserting that Individual Victim-2 never received and never cashed Treasury Check-2, which corresponded to VA benefits to which Individual Victim-2 is entitled. I understand from discussions with personnel at the VA Office of Inspector General that Victim-2 has since passed away.

18. From my discussions with other law enforcement officers and my review of law enforcement documents and records, I am aware that, on or about July 5, 2024, BRANDON HUNTER-CARNEY, the defendant, entered on duty as a police officer with the City of Mount Vernon Police Department.

**HUNTER-CARNEY CONFESSES TO THE BANK FRAUD SCHEME**

19. From my participation in this investigation, including without limitation my discussions with investigators employed by the Westchester County District Attorney's Office, I am aware that, on or about April 8, 2026, BRANDON HUNTER-CARNEY, the defendant, was charged by complaint in Mount Vernon City Court with criminal possession of stolen property in the second degree and grand larceny in the second degree in connection with his alleged possession and

negotiation of Business Check-1, discussed above. I am also aware that HUNTER-CARNEY was placed under arrest by local authorities on or about the same day, and that his residence in or around Mount Vernon, New York—specifically, the South 10th Avenue Address—was subjected to a warrant-authorized search by state law enforcement officers.

20. After his arrest on or about April 8, 2026, I am aware from discussions with other law enforcement officers and my review of law enforcement documents and records, including video recordings, that BRANDON HUNTER-CARNEY, the defendant, executed a written waiver of his *Miranda* rights and made the following statements, in substance and in part and without limitation, in the course of a recorded interview with law enforcement personnel:

a. When shown an image of Business Check-1, HUNTER-CARNEY, in sum and substance, confirmed that he had endorsed Business Check-1 with his signature and deposited it into a business account he held at Bank-1. HUNTER-CARNEY stated, in sum and substance, that he opened the HUNTER-CARNEY Bank-1 Business Checking Account after he had filed for the New York State registration of a business entity bearing the same name as the entity to which Business Check-1 was addressed.

b. When shown an image of Treasury Check-1, HUNTER-CARNEY, in sum and substance, stated that he did not recognize Treasury Check-1, but confirmed that he had effected two withdrawals from the HUNTER-CARNEY Bank-1 Personal Checking Account following the deposit of Treasury Check-1 by an associate. When shown surveillance images, excerpted above, of an individual matching his own appearance effecting teller withdrawals on or about June 28, 2024 at a Bank-1 branch in or around New Rochelle, following the deposit of Treasury Check-1, HUNTER-CARNEY identified himself in those images.

c. When shown surveillance images, excerpted above, of CC-1 effecting the deposit of Treasury Check-1 into the HUNTER-CARNEY Bank-1 Personal Checking Account on or about June 18, 2024, which law enforcement collected from the Bank-1 branch in or around Queens, HUNTER-CARNEY identified CC-1 to law enforcement by street name and, eventually, legal first name. HUNTER-CARNEY also identified multiple associates of CC-1 by street name, who, he believes, are involved in the Check Fraud Scheme as well. HUNTER-CARNEY stated, in sum and substance, that he grew up with CC-1 in or around Mount Vernon, and that CC-1's occupation was "getting checks" and "scamming."

d. HUNTER-CARNEY claimed, in sum and substance, that he opened the HUNTER-CARNEY Bank-1 Business Checking Account and deposited Business Check-1 at the direction of CC-1, as a "favor" to CC-1. HUNTER-CARNEY stated, in sum and substance, that he received Business Check-1 from CC-1 and was driven to a Bank-1 branch to deposit Business Check-1 by CC-1. HUNTER-CARNEY also stated, in sum and substance, that he was to receive a 15%-20% "cut" of any proceeds received from the check's deposit. HUNTER-CARNEY confirmed, in sum and substance, that Business Check-1 ultimately did not clear, and that no proceeds were received.

e. HUNTER-CARNEY stated, in sum and substance, that he effected approximately two cash withdrawals from the HUNTER-CARNEY Bank-1 Personal Checking Account

following CC-1's deposit of Treasury Check-1 into the same account. HUNTER-CARNEY claimed, in sum and substance, that he provided the proceeds of those withdrawals to CC-1.

21. In the course of the warrant-authorized search of the South 10th Avenue Address on or about April 8, 2026, I am aware that law enforcement personnel recovered letter correspondence dated on or about July 3, 2024 from Bank-1 to BRANDON HUNTER-CARNEY, the defendant, regarding Treasury Check-2, discussed above. Bank-1's correspondence relayed, in substance and in part, that Bank-1 was unable to accept the deposit of Treasury Check-2 because the check's endorsement did not match the payee name printed on the check. The correspondence also encloses a "legal copy" of Treasury Check-2, regarding which the correspondence states, in sum and substance, "you can use it the same way you would use the original check." A photograph of the financial institution correspondence, including the "legal copy" of Treasury Check-2, which I understand was identified by law enforcement in a drawer of a chest in or near HUNTER-CARNEY's bedroom, is below:




*[Remainder of page intentionally blank]*

WHEREFORE, I respectfully request that a warrant be issued for the arrest of BRANDON HUNTER-CARNEY, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

KRISTEN KEMMLEIN
Special Agent
U.S. Department of the Treasury
Treasury Inspector General for Tax Administration

Sworn to before me this
16th day of April, 2026.

THE HONORABLE JUDITH C. McCARTHY
Chief United States Magistrate Judge
Southern District of New York